# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MILAN C. STEWART,**

                **Plaintiff,**

v.                                               Case No. 20-CV-1494

**MICHELLE HAESE,** *et al.***,**

                **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Milan C. Stewart, who is representing himself and incarcerated at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Stewart was allowed to proceed on Eighth Amendment deliberate indifference claims against the defendants. Stewart alleges that the defendants did not remove him from his cell once his cellmate tested positive for COVID-19.

The defendants filed a motion for summary judgment (ECF No. 28.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 20.) For the reasons stated below, the defendants' motion for summary judgment is granted.

## PRELIMINARY MATTERS

In their reply brief, the defendants note that Stewart's response materials are deficient. Specifically, the defendants state that Stewart failed to file any

responses to the defendants' proposed findings of fact or his own proposed findings of fact as required by Civil Local Rule 56(b)(2)(B) with his response to their summary judgment motion. He also did not file a declaration or any evidence supporting his response to their motion for summary judgment.

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Stewart invokes 28 U.S.C. § 1746 in his amended complaint, which is enough to convert the amended complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Stewart's submissions where appropriate in deciding defendants' motion.

**FACTS**

At all times relevant, Stewart was incarcerated at Green Bay Correctional Institution. (ECF No. 30, ¶ 1.) At the time, Green Bay was experiencing an outbreak of COVID-19 and, as a result, implemented several protocols and policies to mitigate the spread of the virus. (*Id.*, ¶ 15.) Their efforts included limiting the ability of inmates to move around the institution; requiring masks; giving inmates more cleaning supplies; limiting or suspending outside visitors; conducting symptom screening; conducting testing; and when practicable, quarantining or isolating positive inmates. (*Id.*, ¶¶ 15-33.) Around August 10, 2020, the number of

2

infections at Green Bay increased to the point where Green Bay did not have the capacity or bed space to isolate every inmate who tested positive for COVID. (*Id.*, ¶ 35.) Green Bay then pivoted to a policy where some inmates who tested positive were placed on "sick cell status," which essentially meant the inmate had to quarantine in place. (*Id.*, ¶ 36.) In the instance where an inmate who had to quarantine in place had a cellmate, the cellmate would not be moved to another cell because that cellmate had already been exposed to COVID. (*Id.*, ¶¶ 37-38.)

On August 16, 2020, Stewart's cellmate was tested for COVID and was notified of the positive test result on the afternoon of August 17, 2020. (*Id.*, ¶¶ 43-44.) Once Stewart learned that his cellmate was positive, he asked several guards, identities unknown and labeled as John Does[1], if he could move to another cell. (ECF No. 13, ¶ 11.) When the guards refused to allow Stewart to switch cells, he wrote "multiple request slips" requesting to switch cells to defendants Deputy Warden Michelle Haese, Security Director John Kind, and Unit Manager Mary Tallier. (*Id.*, ¶ 12; ECF No. 40 at 1.) Haese and Kind did not respond, but Tallier did, stating "I can understand why you wouldn't want to be in a cell with an individual testing positive. Unfortunately, you have already been exposed. I hope you stay well and have a strong immune system." (ECF No. 13, ¶ 13; ECF No. 40 at 1.)

---

[1] Stewart never identified the John Doe defendants, in part because the court never set a deadline for him to do so. However, the fact that the Does were never identified is immaterial because even if Stewart had identified the Doe defendants, the claims against them would still be dismissed for the same reason the claims against the named defendants are dismissed.

3

On August 18, 2020, Stewart refused a COVID screening from the Health Services Unit (HSU) stating that he did not have any symptoms. (ECF No. 30, ¶ 45.) That same day, Stewart was tested for COVID, and he received notification that he was positive on August 21, 2020. (*Id.*, ¶¶ 46-47.) A few days later, Stewart began experiencing symptoms including aches and pains, headaches, fatigue, cough, loss of taste and smell, and shortness of breath. (ECF No. 13, ¶ 16.) He was treated in the HSU on several occasions in August, September, and October 2020. (ECF No. 30, ¶¶ 51-54.)

The defendants have no recollection of receiving request slips or correspondence from Stewart about his cell placement. (*Id.,* ¶48.) They also have no record of any such communication. (*Id.*, ¶ 49.) They also have no recollection of ever being informally notified that Stewart's cellmate had tested positive. (*Id.*, ¶ 50.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Stewart claims that the defendants violated his Eighth Amendment rights when they failed to move him to a different cell once his cellmate tested positive for COVID-19. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

5

In order to demonstrate a violation of the Eighth Amendment, a prisoner must make two showings. "First, the deprivation alleged must be, objectively, sufficiently serious. *Id.* at 824 (quotations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The second requirement is that the prison official was deliberately indifferent "to inmate health or safety," *id.*, meaning that he was both aware of and disregarded "an excessive risk to inmate health or safety," *id.* at 837.

It is undisputed that COVID creates conditions posing a substantial risk of serious harm. The focus then, is whether the defendants were deliberately indifferent to the risk Stewart was facing. An aspect of the deliberate indifference prong is whether the defendants' deliberate indifference caused the plaintiff's injury, because underpinning every § 1983 claim is the idea that "Section 1983 imposes liability on every official who 'subjects, *or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (quoting 42 U.S.C. § 1983) (emphasis in original). When analyzing causation in § 1983 cases, courts should consider this provision "'against the background of tort liability.'" *Id.* (quoting *Monroe v. Pape*, 365 U.S. 167 (1961)). This means that the defendants' actions "must be the 'cause-in-fact' of the injury, *i.e.*, 'the injury would not have occurred absent [the defendants'] conduct.'" *Id.* (quoting *Ciomber v. Cooperative*

6

*Plus, Inc.*, 572 F.3d 635, 640 n.1 (7th Cir. 2008)). The defendants' actions must also "be the 'proximate cause' . . . of the injury, *i.e.*, 'the injury is of a type that a reasonable person would see as a likely result of his or her conduct.'" *Id*. This requires a court "to analyze the relation between an official's conduct and a resulting injury; when, where, and exactly how that injury occurs is part of the proximate cause question."

The defendants argue that as a matter of law that they cannot be held liable for causing Stewart to contract COVID. They state that Stewart had already been exposed for several hours before asking to be removed from his cell, so honoring his request would have been futile—he likely already contracted COVID. Generally, "[c]ausation is a question of fact to be determined by the trier of fact." *Jenkins v. Nelson*, 157 F.3d 485, 493 (7th Cir. 1998). And here, while it seems likely that anyone who shared a cell with someone exposed to COVID even for a few hours would then subsequently contract COVID, the court cannot say *as a matter of law* that is the case. It is undisputed that the defendants did not remove Stewart from his cell, prolonging his exposure to a COVID positive person. It is also undisputed that Stewart then contracted COVID. Thus, taking the facts in a light most favorable to Stewart, the defendants either ignored or refused his request to be removed from the risk sooner. However, whether the prolonged exposure—which the defendants caused—was a proximate cause of Stewart contracting the disease is something an expert virologist would have to opine on. Then, a trier of fact would have to weigh that testimony. For this reason, summary judgment cannot be

7

granted in favor of the defendants on the grounds that they could not have caused Stewart's infection.

However, summary judgment can be granted on the grounds that the defendants did not act with deliberate indifference to the substantial risk facing Stewart. The jurisprudence on COVID cases in the context of Constitutional claims is still developing, but there are a few cases that provide preliminary guidance on the question of whether prison officials' response to a threat posed by novel pandemic was constitutionally appropriate. For example, the Sixth Circuit Court of Appeals, in the context of a *habeas* petition, considered whether Federal Bureau of Prisons' response to the pandemic constituted deliberate indifference under the Eighth Amendment. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). Noting that the nature of the pandemic made it nearly impossible for the defendants to ultimately prevent the inmates from sustaining harm, the court framed the deliberate indifference inquiry as "whether the [Federal Bureau of Prisons] 'responded reasonably to the risk.'" *Id.* at 840-841 (quoting *Farmer*, 511 U.S. at 844).

Similarly, the Seventh Circuit Court of Appeals, while considering a preliminary injunction against Cook County Jail and in the context of the Fourteenth Amendment's standard for whether prison conditions were objectively unreasonable, held that courts should not consider prison officials' response to the pandemic "in a vacuum" but rather should consider the "totality of the circumstances" when evaluating the reasonableness of the prison officials'

8

responses. *Mays v. Dart*, 974 F.3d 810, 820 (7th Cir. 2020). The Seventh Circuit further noted that "'[w]hen evaluating reasonableness . . . courts must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (internal citations omitted)). The Seventh Circuit also instructed that "a court must 'account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The Seventh Circuit concluded that "[c]orrectional administrators must have 'substantial discretion to devise reasonable solutions to the problem they face,' particularly when safety and security interests are at stake.'" *Id.* (quoting *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012)).

Here, although the more stringent standard of the Eighth Amendment applies, the principles set out by the Sixth and Seventh Circuits are still instructive. Against this background, refusing to remove Stewart from his cell was not unreasonable and therefore does not rise to the level of deliberate indifference. It is undisputed that Green Bay had several measures in place to prevent the spread of COVID, which included quarantining or isolating inmates when the space was available. Unfortunately, in August 2020, Green Bay was in the midst of an outbreak, and it is undisputed that removing COVID positive individuals from their cells was no longer feasible. Thus, in order to prevent the spread even further, a

9

policy was enacted where COVID positive individuals were told to quarantine in place, and the decision was made to have exposed cellmates remain in the cell too. The defendants, then, were merely acting on policy.

And, enforcing the policy was a reasonable response. Indeed, the policy was not so different from the guidance that the Centers for Disease Control and Prevention (CDC) promulgated at the time, which was that any individual living with a person who tested positive for COVID and was exposed to COVID by that person should quarantine in their home for 14 days.[2] That guidance resulted in policies that many employers and schools imposed on unincarcerated individuals, many of whom then had to stay at home or even care for a COVID-positive individual. At the core of both these policies is the idea of preventing further spread at the expense of the exposed individuals.

Additionally, Stewart does not present any evidence that indicates the policy was unreasonable; was unreasonably enforced; or "that the officials have exaggerated their response to these considerations." *Mays*, 974 F.3d at 820. Without that evidence, "courts should ordinarily defer to [the prison officials'] expert judgment in such matters." *Id.* Stewart, then, fails to demonstrate that the policy of an isolating exposed cellmate with their COVID-positive cellmate was unreasonable. If the policy is not unreasonable, then the defendants cannot, as a matter of law, be held liable for deliberate indifference because the defendants merely enacted a reasonable policy. It is unfortunate that adhering to the policy

---

[2] https://web.archive.org/web/20200820080835/https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html

failed to prevent Stewart from contracting the disease, but in light of the extreme challenges facing the defendants to further prevent the spread, that failure does not rise to the level of a Constitutional violation. Summary judgment is granted in the defendants' favor.

## CONCLUSION

The defendants' motion for summary judgment is granted and the case is dismissed. The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment on the merits, the court does not need to address the qualified immunity argument.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** the defendants' motion for summary judgment (ECF No. 28) is **GRANTED.**

**IT IS FURTHER ORDERDED** that the case is **DISMISSED** The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 31st day of May, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge